IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALLIED CHEMICAL CARRIERS, INC., § § | | |
| Plaintiff, § | | |
| § | | |
| v. § | CIVIL ACTION NO. H-10-1109 | |
| § | | |
| NATIONAL BIOFUELS LP, *et al.*, § | | |
| Defendants. § | | |

## **MEMORANDUM AND ORDER**

Plaintiff Allied Chemical Carriers, Inc. ("Allied") filed this lawsuit seeking to "pierce the corporate veil" in order to recover from Defendants Fulcrum Power Services, L.P. ("FPS"), Fulcrum Energy, LLC ("FE"), and Gerardo P. Manalac the amounts awarded against National Biofuels L.P. ("NBF") following arbitration regarding two contracts between Allied and NBF. The case is now before the Court on Defendants' Motion for Summary Judgment [Doc. # 28].[1] Allied filed a Response [Doc. # 33], and Defendants filed a Reply [Doc. # 39]. Having reviewed the full record and applied governing legal authorities, the Court **grants** Defendants' Motion for Summary Judgment.

---

[1] Defendants National Biofuels, L.P. and National Biofuels LLC are no longer in business, have not been served, and have not participated in this lawsuit.

## I.     BACKGROUND

FE is the general partner of FPS, the parent of two Houston-based electricity providers. Manalac is the Executive Vice President of FE. FPS was the parent of NBF when it was operating as a biofuels trading business. NBF stopped trading biofuels in late 2007.

NBF entered into two contracts for Allied to transport biofuels, one in January 2007 and one in March 2007. NBF subsequently failed to pay for the transportation services Allied provided under the two contracts, so Allied pursued and obtained two arbitration awards against NBF by default in October 2008. One arbitration award was for $107,623.97, and the second award was for $16,842.59. The arbitration awards were later reduced to judgment in the United States District Court for the Southern District of New York. In March 2009, Allied initiated proceedings to register the arbitration awards and the corresponding judgment in Texas where NBF was domiciled.

In April 2009, FE advised Allied that Certificates of Cancellation had been filed on behalf of NBF and its general partner, National Biofuels, L.L.C., the day after Allied initiated proceedings to register the judgment. When NBF went out of business, FPS lost approximately $11,000,000.00 in capital contributions, lost approximately $5,000,000.00 in connection with loans that FPS had guaranteed and

was subsequently required to pay, and absorbed several thousand dollars in unpaid administrative services.

Allied then filed this lawsuit seeking to pierce NBF's corporate veil in order to collect from Defendants the arbitration awards and resulting judgment. After a full opportunity to complete discovery, Defendants moved for summary judgment. The Motion has been fully briefed and is ripe for decision.

## II.      STANDARD FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex*, 477 U.S. at 322-23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit &*

*Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant.  *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings.  *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002).  Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden.  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008).  Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case."  *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted).  In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts.  *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court may make no credibility determinations or weigh any evidence, and must disregard all evidence favorable to the moving party that the jury is not required to believe.  *See Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage Co.*, 336 F.3d at 412-413).  The Court is not required to

accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence. *Id*. (citing *Reaves Brokerage*, 336 F.3d at 413). Moreover, in a case to be tried to the Court without a jury, "a district court has somewhat greater discretion to consider what weight it will accord the evidence." *Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 676 (5th Cir. 2010) (quoting *In re Placid Oil Co.,* 932 F.2d 394, 397 (5th Cir. 1991)). "When deciding a motion for summary judgment prior to a bench trial, the district court 'has the limited discretion to decide that the same evidence, presented to him or her as a trier of fact in a plenary trial, could not possibly lead to a different result.'" *Id.* (quoting *In re Placid Oil*, 932 F.2d at 398).

### III. ANALYSIS

Allied seeks to "pierce the corporate veil" in order to impose on Defendants the obligation to pay the arbitration award against NBF. Under current Texas statutory law, a shareholder "may not be held liable to the corporation or its obligees with respect to . . . any contractual obligation of the corporation . . . on the basis that the holder . . . is or was the alter ego of the corporation or on the basis of actual or constructive fraud, a sham to perpetrate a fraud, or other similar theory . . .." *Willis v. Donnelly*, 199 S.W.3d 262, 272 (Tex. 2006) (citing TEX. BUS. ORGS. CODE § 21.223(a)(2)). The liability of a shareholder for a corporation's contractual

obligation that is limited by § 21.223 "is exclusive and preempts any other liability imposed for that obligation under common law or otherwise." *Id.* (citing TEX. BUS. ORGS. CODE § 21.224). The only exception to § 21.223's rule that a corporation's contractual debt cannot be imposed on a shareholder is where the shareholder "caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the" shareholder.[2] *Id.* (citing TEX. BUS. ORGS. CODE § 21.223(b)).

Allied relies throughout its Response on general language regarding "alter ego" and "sham to perpetrate a fraud" theories to pierce the corporate veil. Although it is true that these are two categories that can allow piercing the corporate veil under Texas law, § 21.223(b) adds additional requirements for piercing the corporate veil in cases involving a corporation's contractual debt. *See Rimade Ltd. v. Hubbard Enters., Inc.*, 388 F.3d 138, 143 (5th Cir. 2004). The requirements of § 21.223 apply equally to attempts to pierce the corporate veil based on an alter ego theory and based on a "sham to perpetrate a fraud" theory. *See id.*; TEX. BUS. ORGS. CODE § 21.223(a). As a result, Allied's reliance on *Castleberry v. Branscum*, 721 S.W.2d 270 (Tex. 1986), and its case law progeny, is misplaced. As was previously noted by this Court,

---

[2] Section 21.223(a)(3) specifically precludes piercing the corporate veil based on a failure of the corporation to observe any corporate formality. TEX. BUS. ORGS. CODE § 21.223(a)(3); *Howell v. Hilton Hotels Corp.*, 84 S.W.3d 708, 714 (Tex. App. – Houston [1st Dist.] 2002, pet. denied).

the Texas Legislature enacted § 21.223 in response to the *Castleberry* decision and "now requires a showing of actual fraud in order to pierce the corporate veil" in cases involving a corporation's contractual obligations.  *See Acceptance Indem. Ins. Co. v. Maltez*, 619 F. Supp. 2d 289, 301 (S.D. Tex. 2008); *see also Fid. & Deposit Co. of Md. v. Commercial Cas. Consultants, Inc.*, 976 F.2d 272, 275 (5th Cir. 1992) (recognizing that *Castleberry* was superseded by the Texas Legislature).  It accordingly is clear that current Texas law requires a showing of actual fraud perpetrated for the direct personal benefit of the shareholder in order to pierce the corporate veil to collect a corporation's contractual debts from a shareholder.  *See, e.g., Willis*, 199 S.W.3d at 272.

### A.     Actual Fraud Element

To prove actual fraud for purposes of § 21.223, the plaintiff must prove "dishonesty of purpose or intent to deceive."  *See Menetti v. Chavers*, 974 S.W.2d 168, 173-74 (Tex. App. – San Antonio 1998, no pet.).  Additionally, the actual fraud must have related specifically to the contract at issue.  *See Rutherford v. Atwood*, 2003 WL 22053687, **4-5 (Tex. App. – Houston [1st Dist.] Aug. 29, 2003, reh'g overruled) (citing *Menetti*, 974 S.W.2d at 175); *see also Farr v. Sun World Sav. Ass'n*, 810 S.W.2d 294, 295 (Tex. App. – El Paso 1991, no pet.) (finding actual fraud to pierce the corporate veil because fraud directly related to transaction at issue).

Allied argues that Defendants' filing of Certificates of Cancellation on behalf of NBF and National Biofuels, LLC one day after Allied filed a petition to register its judgment against NBF in Texas raises an inference of actual fraud. Allied's argument is unpersuasive. Initially, even if the filing of Certificates of Cancellation raised an inference of actual fraud, which is doubtful, any such fraud would be unrelated to the contracts for Allied to transport biofuels for NBF. Moreover, it is undisputed that FPS did not file Certificates of Cancellation for NBF and National Biofuels, LLC when Allied sought to recover amounts owed on the transportation contracts, when Allied instituted arbitration proceedings, when Allied obtained arbitration awards by default against NBF, or when Allied obtained confirmation of the arbitration awards and had them reduced to judgment. Instead, the evidence shows, and the only reasonable inference raised by the evidence is, that Certificates of Cancellation for NBF and National Biofuels, LLC were filed when the winding up process was complete. Unlike the situation in *In re JNS Aviation LLC*, 376 B.R. 500 (Bankr. N.D. Tex. 2007), and in *Latham v. Burgher*, 320 S.W.3d 602 (Tex. App. – Dallas 2010, no pet.), relied on by Allied, Defendants in this case did not create a new company to conduct the same biofuels business, but instead the existing NBF entities stopped conducting business and were completely dissolved. The timing of the Certificates of Cancellation does not raise a reasonable inference that Defendants "caused the

corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud" on Allied in connection with the transportation contracts. The evidence, if presented at trial, would not lead the Court to rule differently. On this basis, Defendants are entitled to summary judgment.

### B. Direct Personal Benefit Element

Even had Allied presented evidence that raised a genuine issue of material fact regarding the actual fraud element of the § 21.223 exception, Allied's effort to pierce the corporate veil would fail. Allied has not presented evidence that raises a genuine fact dispute regarding the direct personal benefit element. The statute provides that the corporate veil can be pierced only if the corporation was used to perpetrate an actual fraud "for the direct personal benefit" of the shareholder or affiliate. *See* TEX. BUS. ORGS. CODE § 21.223(b). The actual fraud must have been for the direct personal benefit of the shareholder. *See Rutherford*, 2003 WL 22053687 at *3.

Allied presents evidence that Kenmont Special Opportunities Fund, L.P. ("Kenmont") made several loans to NBF totaling over $16,000,000.00. FPS guaranteed those loans on NBF's behalf. In 2007, Kenmont called the loans and FPS was forced to buy out the remaining balance of $7.3 million. Allied argues that this evidence raises an inference that FPS, as NBF's only secured creditor, and the other Defendants perpetrated an actual fraud for their own direct personal benefit. The

Court is not persuaded. Evidence that FPS, the guarantor of the loans, was required to buy out the remaining balance on those loans does not raise a reasonable inference that FPS intended to perpetrate a fraud on Allied for Defendants' personal benefit. Moreover, any inference that FPS and the other Defendants would buy out a loan balance in excess of $7,000,000.00 and knowingly give up $11,000,000.00 in capital contributions in order to defraud Allied out of less than $200,000.00 is not a reasonable one. On this basis also, Defendants are entitled to summary judgment.

## IV. <u>CONCLUSION AND ORDER</u>

Allied has not presented evidence that raises a genuine issue of material fact in support of its attempt to impose against Defendants the arbitration award-created debt of NBF. Specifically, Allied has not presented evidence to raise a genuine issue of material fact regarding the actual fraud and direct personal benefit requirements of § 21.223 of the Texas Business Organizations Act. Accordingly, it is hereby

**ORDERED** that Defendants' Motion for Summary Judgment [Doc. # 28] is **GRANTED**. The Court will issue a separate final judgment.

SIGNED at Houston, Texas, this **7th** day of **July, 2011**.

_____
Nancy F. Atlas
United States District Judge